IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

| | | |
|---|---|---|
| **In re:** | * | |
| | * | **Case No.:  1 : 24-bk-10693-NWW** |
| **A & J Logistics, LLC,** | * | |
| | * | |
| | * | **Chapter: 11** |
| **Debtor(s)** | * | |

---

## DEBTOR' CHAPTER 11 PLAN OF REORGANIZATION
## (Subchapter V)

---

This Plan (hereinafter "Plan") is for a small business debtor under Subchapter V. Pursuant to the requirements of 11 U.S.C. § 1190, this Plan includes "(A) a brief history of the business operations of the debtor; (B) a liquidation analysis; and (C) projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization."

    A.    <u>Brief History of the Business Operations of the Debtor</u>. Debtor is a Tennessee Limited Liability Company that provides transportation services to the eastern side of the United States.  Debtor was a successful business, employing myriad 1099 employees, with annual gross revenue of approximately $2,907,509.00 in 2022 and annual gross revenue of $3,200,812.00 in 2023[1].  However, because of rising insurance costs, fuel costs, equipment rental costs, per diem costs, driver turnover, an aggressive compensation model[2], and multiple truck breakdowns requiring engine, transmission, and fuel system replacements, the Debtor's cash flow became strained. As a result Debtor sough and procured multiple cash injections in the form of advance loans with exorbitant interest rates[3], purported sales of purchase payment rights[4], and purported sales of future receipts[5].  While these injections provided short term solutions, their aggressive terms ensured future default.  Rowan Advance, LLC filed suit against Debtor in the Supreme Court of the State of New York, County of Monroe, alleging *inter alia* breach of contract by Debtor.  Creditor Newbury Capital, LLC, also provided notice of a purported U.C.C. lien against Debtor and filed suit against Debtor in the Supreme Court of the State of New York, County of Ontario on February 14, 2024, also alleging breach of contract.

    In view of the above, and in order to avoid immediate and irreparable cash flow disruptions, the Debtor has determined that the best course of action is to seek protection under Chapter 11 of the United States Bankruptcy Code.

---

[1] See 2022 and 2023 Federal Income Tax Return, Schedule C for owner Ashley E Halloran.
[2] 20% of gross earnings, before any performance-related bonuses or per diem.
[3] Mulligan Funding/FinWise Bank
[4] Bitty Advance 2, LLC
[5] Rowan Advance, LLC, Newbury Capital, LLC, and Reliable Fast Cash, LLC

B.    <u>Liquidation Analysis</u>. To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as ***<u>Exhibit A</u>***.

C.    <u>Feasibility Projections</u>. The Plan Proponents must also show that they will have enough cash over the life of the Plan to make the required Plan payments.

i.    The Debtor has provided projected financial information as ***<u>Exhibit B1 through B3</u>***.

ii.    The Debtor's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Code) for the period described in § 1191(c)(2) of (total of DMI over 60 months).

iii. The final Plan Payment is expected to be paid on August 1, 2029, or 60 months after the anticipated Effective Date.

iv.    **You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections**.

**ARTICLE I**
<u>SUMMARY</u>

1.01    This Plan of Reorganization under Chapter 11 of the Code (the "Plan") proposes to pay the creditors of Debtor from future income of the Debtor as set forth herein.

1.02    This Plan provides for:

| | |
|---|---|
| One (1) | Classes of administrative claims; |
| One (1) | classes of priority claims; |
| Eight (8) | classes of secured claims; |
| One (1) | classes of non-priority unsecured claims; and |
| One (1) | class that is the Debtor's interest in property of the estate. |

1.03    Non-priority unsecured creditors holding allowed claims will be paid with disbursements totaling $147,640.20 to the class. This Plan also provides for the payment of administrative and priority claims.

1.04    All creditors and equity security holders should refer to Articles III through VII of this Plan for information regarding the precise treatment of their claim.

**1.05    <u>Your rights may be affected. You should read this Plan carefully and discuss it with your attorney, if you have one. If you do not</u>**

**have an attorney, you may wish to consult one.**

## ARTICLE II
### CLASSIFICATION OF CLAIMS AND INTERESTS

2.01    Class 1. This class shall consist of administrative expenses, including those claims incurred post-petition, under § 507(a)(2) over the term of the Plan.  See § 1191(e).

2.02    Class 2. This class shall consist of all allowed claims entitled to priority under §507(a) of the Code [except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8)].

2.03    Class 3. This class shall consist of the claim of Provident Commercial Finance, to the extent allowed as a secured claim under § 506 of the Code.

2.04    Class 4.  This class shall consist of the claim of the U.S. Small Business Administration, to the extent allowed as a secured claim under §506 of the Code.

2.05    Class 5. This class shall consist of the claims of Cadence Bank of Tennessee, to the extent allowed as a secured claim under § 506 of the Code.

2.06    Class 6. This class shall consist of all under-secured and unsecured claims allowed under § 502 of the Code that are not entitled to priority and not expressly included in the definition of any other class.  This includes claims of those creditors who filed a proof of claim, as well as those creditors Debtor scheduled and identified in the Attachment titled ***Table of Unsecured Claims***.  This class includes, without limitation, claims arising out of the rejection of any executory contract or unexpired lease, each allowed claim secured by a lien on property in which the Debtor have an interest to the extent that such claim is determined to be unsecured pursuant to 11 U.S.C. § 506(a), or unsecured by way of avoidance pursuant to 11 U.S.C. § 522(f), and each such claim of the class described in 11 U.S.C. § 507(a), to the extent that the allowed amount of such claim exceeds the amount which such claim may be afforded priority thereunder.

2.07    Class 7. This class shall consist of the interests of the individual Debtor in property of the estate.

## ARTICLE III
### TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS AND, AND COURT FEES

3.01    Unclassified Claims. Except as otherwise provided under the Plan, pursuant to § 1123(a)(1), administrative expense claims allowed under §507(a)(2) and priority tax claims under § 507(a)(8) are not in a class.

3.02    Administrative Claims. Except as otherwise provided under the Plan, each holder of an administrative expense claim allowed under § 503 of the Code will be

paid in full on the Effective Date of the Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.02.1 In the alternative to Article 3.02, in the event this Plan is non-consensually confirmed under § 1191(b), each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full through cash disbursement of all available funds that are not specifically dedicated to set monthly payments within this Plan.

3.03   Priority Tax Claims. With respect to a claim of a kind specified in § 507(a)(8), the holder of such claim will receive on account of such claim regular installment cash payments of a total value, as of the Effective Date, equal to the allowed amount of the priority portion of such claim, over a period not to exceed sixty (60) months from the Petition Date, with interest at the rate specified under applicable non-bankruptcy law. No penalty shall accrue on such priority tax claims after the Petition Date. The non-priority general unsecured portion(s) of the allowed claims of the holders of priority tax claims, including the penalty and interest accrued thereon, shall be treated in the unsecured class within this Plan, and shall be subject to any discharge granted to the Debtor under § 1192.

3.04   Post-Confirmation Tax Claims.   All tax claims that are incurred after Confirmation shall be payable when due under applicable non-bankruptcy law.

## ARTICLE IV
## TREATMENT OF CLAIMS, LIENS AND INTERESTS UNDER THE PLAN

4.01   Claims and interests shall be treated as follows under the Plan:

| Class No. | Claim or Interest Holder | Impaired (Yes/No) | Plan Treatment |
|---|---|---|---|
| 1 | Administrative Claims | No | These claims shall be paid in full from the first available funds and as allowed in their amount by Orders of this Court. |
| 2 | Priority Claims | No | There are no priority claims. |

| 3 | Provident Commercial Finance | No | Provident shall retain its lien(s) in the collateral described in applicable loan documentation and U.C.C. lien(s), and continue to be paid directly by Debtor pursuant to the terms of the applicable loan documentation and the Final Order (1) Granting Debtor's Emergency Motion for Debtor-In-Possession Financing Pursuant to 11 U.S.C. § 364 and (2) Granting Use of Cash Collateral and Providing for Adequate Protection entered on April 25, 2024 at docket no. 72.  The terms of the loan documentation and Final Order at docket no. 72 shall control over any contradictory provision in Debtor's Chapter 11 Plan. |

| 4 | U.S. Small Business Administration (SBA) | Yes | The secured claim of SBA (Claim 5, Claims Register) shall be allowed in the amount of the $60,944.34[6] less any Adequate Protection Payments received prior to the Effective Date, if any. SBA will retain its lien in the collateral described in the loan documentation filed with its Proof of Claim, until completion of all payments as specified herein.

The loan of SBA shall be re-amortized with interest at the rate of 10.5%, in 60 monthly installments of $1,309.93.  Upon completion of the 60 monthly installment payments, the secured claim of SBA shall be deemed paid in full, and the lien of SBA released within 30 days after receipt of the 60th installment.

The remaining balance of the claim of SBA in the amount of $99,666.01 shall be treated as a Class 6 nonpriority unsecured claim. |

---

[6] Amount is based on all property reflected on Schedule A (docket no. 1) excluding bank account balances and accounts receivable.

| 5 | Cadence Bank | Yes | The secured claim of Cadence Bank ("CB") (Claim 4, Claims Register) shall be allowed in the amount owed as of the Petition Date, less any Adequate Protection Payments received prior to the Effective Date, if any. CB will retain its lien in the collateral described in the loan documentation filed with its Proof of Claim, until completion of all required payments pursuant to the terms of the loan documentation. |
|---|---|---|---|
| | | | The loan of CB shall continued to be paid directly by co-guarantor Melody Halloran pursuant to the terms of the loan documentation filed with the Proof of Claim.  The terms of the loan documentation shall control over any contradictory provision in Debtor's Chapter 11 Plan. |

| 6 | All Allowed Non-Priority Unsecured Claims | Yes | This class shall consist of the allowed under-secured and unsecured claims not entitled to priority and not expressly included in the definition of any other class. This class includes, without limitation, claims arising out of the rejection of any executory contact or unexpired lease, each allowed claim secured by a lien on property in which the Debtor have an interest to the extent that such claim is determined to be unsecured pursuant to 11 U.S.C. § 506(a), or unsecured by way of avoidance pursuant to 11 U.S.C. § 522(f), and each such claim of the class described in 11 U.S.C. § 507(a), to the extent that the allowed amount of such claim exceeds the amount which such claim may be afforded priority thereunder.<br><br>The Plan provides a pool of $147,640.20 to be paid to the claimholders in this class. The Debtor shall pay $2,460.67 per month for 60 months beginning on the Effective Date. |
| 7 | Debtor | No | The Debtor will retain all ownership rights in property of the estate. |

<u>4.02</u> <u>Terms Applicable to All Classes of Secured Claims unless stated otherwise:</u>

a) Claims for default interest are waived. §§1123(a)(5)(G) and (b)(5) and 1124(2);

b) The payment amounts proposed to holders of Allowed Secured Claims include the estimated interest rate stated for each Class;

c) The payments proposed to the holders of these Claims shall be in full satisfaction of their Claims against the Debtor.

d) If a holder of an Allowed Secured Claim has a properly perfected Lien (that the Debtor does not avoid), then such holder shall retain its Lien(s) until paid in full as provided for in the Plan;

e) Upon payment of all monies required by the Plan to be paid on

account of an Allowed Secured Claim, the holder of such Claim must within thirty (30) days record a release of such holder's security interest(s) in the Debtor's assets and that of any other person or entity that may be liable for the Allowed Secured Claim;

f) No payments shall be made on account of any Secured Claim if such claim is not an allowed claim;

g) Within 20 days of entry of an order confirming the Plan, any holder of a Secured Claim seeking recovery of attorneys' fees and expenses under a contract provision or applicable law must file either a Motion or a stipulation with the Debtor as to the amount of its attorneys' fees and expenses. The failure to timely file either a stipulation or a motion shall bar such parties' claim for attorneys' fees and expenses.

4.03    Waiver of Secured Status and Lien Rights by Claimants. ***In the event any of the claimants listed or scheduled as secured file a proof of claim stating that no part of the claim is secured, or fail to timely file a proof of claim, then the claim shall be deemed entirely unsecured and treated as such pursuant to this Plan.***

4.04    Proof of Claim Controls Over Amount Scheduled by Debtor(s). The amount listed on a timely filed proof of claim (subject to allowance of the claim) shall control over any contrary amount listed in the Debtor' schedules and deemed filed pursuant to 11 U.S.C. § 1111(a).

**ARTICLE V**
**ALLOWANCE AND DISALLOWANCE OF CLAIMS**

5.01    Objection to Claims. The Debtor or any party in interest may file an objection to any claim in any class on or before the first anniversary of the Effective Date. Objections not filed within such time will be deemed waived. If any claim or portion thereof is challenged by an objection, the claim shall be treated as a disputed claim.

5.02    Disputed Claim. A disputed claim is claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor(s), or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.03    Delay of Distribution on Disputed Claims. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order. Notwithstanding this delay of distribution on disputed claims, distribution may, in the Debtor' sole discretion, be made on any portion of such disputed claim which is undisputed, pending resolution of the claim allowance as a whole.

5.04   <u>Settlement of Disputed Claims</u>. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. Following Confirmation and closing of the case, the Debtor shall retain the authority to settle and compromise claims with consent of the settling claimholder, and without the need for Court intervention or approval.

5.05   <u>Voiding of Liens.</u> Except as otherwise provided under the Plan, Confirmation will void pursuant to § 506(d) all liens in excess of the Allowed Secured Claims.

## ARTICLE VI
<u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

6.01   The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the Effective Date:

| Name of Other Party to Executory Contract/Lease | Description | Assignee |
|---|---|---|
| Wolftever Management | Lease of office space at 111 Cedar Lane, Chattanooga TN 37421 | N/A |

6.02   Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the Effective Date or under Article 6.01 of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date.

6.03   The order confirming the Plan shall constitute an Order approving the rejection of the lease or contract. If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan. Any claim based on the rejection of a contract or lease will be barred unless the claim is made within thirty (30) days of the order confirming the Chapter 11 Plan.

## ARTICLE VII
### MEANS FOR IMPLEMENTATION OF THE PLAN

7.01    Debtor will continue business operations in order to produce revenue sufficient to fund this 60-month Chapter 11 Plan.

7.02    The Debtor proposes to pay $3,770.60 per month for 60 months, which is the amount necessary to pay all administrative costs, priority claims, secured claims, and the unsecured claims in Class 6 as specified in Article 4 of this proposed plan.

7.03    The Debtor anticipates that upon confirmation of a consensual plan pursuant to 11 U.S.C. 1191(a) the Trustee's services will be terminated pursuant to 11 U.S.C. § 1183(c)(1), and that Debtor will act as "Disbursing Agent." As permitted by 11 U.S.C. § 1194(b), the Debtor also intends to act as disbursing agent in the event of non-consensual confirmation under 11 U.S.C. 1191(b).    Upon entry of an Order of Confirmation, Debtor's counsel shall immediately provide Debtor with a disbursement ledger detailing the payee, payee address, the payment amount and payment frequency for all classes other than unsecured claims.

7.04    Any distribution or payment to a creditor shall be sent by first class mail to the creditor's address indicated on the proof of claim filed by that creditor in the case, or if no proof of claim has been filed, to that creditor's most recent address indicated on the Debtor' Schedules or known to the Debtor.    Creditors may change the address to which distributions are sent through amendment of their proof of claim or written notice delivered to Debtor and Debtor's counsel in accordance with Section 8.16.    Creditors are responsible for keeping the Debtor informed of their current address for receipt of distributions or other payments under the Plan.

7.05    If any distribution or payment remains unclaimed and/or uncashed for a period of ninety (90) days after it is sent, then the creditor to whom such distribution was sent will be deemed to have forfeited the distribution and all future distributions, and such creditor's claim shall no longer be deemed allowed, but rather, such claim shall be deemed disallowed and expunged for all purposes, and such person shall be deemed to have no further claim in respect of such distribution and shall not participate in any further distributions under this Plan.    Likewise, if any creditor's distribution is returned as undeliverable, no further distributions to such creditor shall be made and such creditor shall be deemed to have forfeited any and all further distributions.    Any undeliverable or forfeited distribution shall be returned to the Debtor, to be used in accordance with the terms of the Plan.

7.06    Whenever any payment or distribution to made under the Plan shall be due on a Saturday, Sunday, or legal holiday as defined in Fed. R. Bankr. P. 9006(a), such payment or distribution shall instead be made on the next business day.

**ARTICLE VIII**
GENERAL AND MISCELLANEOUS
PROVISIONS

8.01   Definitions and Rules of Construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the below listed definitions. Therefore, the following terms, when used in this Plan, shall have the following meanings:

a. "Adequate Protection Payments" shall mean payments made by the Debtor to creditors holding claims secured by property of the Debtor, from the Petition Date to the Effective Date, whether or not such payments were made directly to the creditor or deposited into an account, and whether or not such payments were made pursuant to an order of the Court.

b. "Code" shall mean the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101, *et seq.*

c. "Confirmation" shall mean the entry by the Court of an order confirming the Plan.

d. "Court" shall mean the United States Bankruptcy Court for the Eastern District of Tennessee and the Judge assigned to this case.

e. "Debtor" shall mean  Deryl Clark Everette, Jr. and Patricia Ann Everette, with the status of and rights conferred to Debtor-in-possession by § 1107 of the Code.

f. "Disposable Income" shall mean that term as defined by 11 U.S.C. § 1191(d).

g. "Effective Date" shall mean the later of (i) the first business day of the second full month following Confirmation, or (ii) the first business day after an appeal of an order confirming this Plan has become final and unappealable. For purposes of the calculations and disbursements proposed within this Plan, an Effective Date of September 1, 2024 is presumed. However, the Debtor may at any time designate an earlier Effective Date by filing written notice thereof with the Court and serving such notice on all creditors and parties in interest.

h. "Interests" shall mean the ownership interests held by the Debtor in Property.

i. "Petition Date" shall mean March 22, 2024.

j. "Plan" shall mean this Chapter 11 Plan as the same may be modified from time to time in accordance herewith or pursuant to applicable law.

k. "Plan Payments" shall mean all funds remitted by the Debtor, the Reorganized Debtor, and/or third parties on behalf of the Debtor or Reorganized Debtor to be distributed pursuant to the Plan.

l. "Reorganized Debtor" shall mean the Debtor after Confirmation.

8.02    Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.03    Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.04    Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.05    Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Tennessee govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.06    Retention of Jurisdiction of the Court. Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction over this Chapter 11 Case and any proceeding related thereto pursuant 11 U.S.C. § 1142 and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to implement the Plan.  Without intending to limit the generality of the foregoing, the Court shall have exclusive jurisdiction:

(a) To determine any and all objections to the allowance, extent, priority or nature of any claims, the amount and proper classification of the claim of any holder and the determination of such objections as may be filed to any claims;

(b) To determine any and all applications for compensation and reimbursement pursuant to §§ 330 or 331 of the Code;

(c) To determine any and all applications for the assumption or rejection of executory contracts and unexpired leases, and the allowance of any claims resulting from rejection thereof;

(d) To determine any and all applications, adversary proceedings and litigated matters that may be filed in this Court;

(e) To interpret, enter Final Orders relating to, and otherwise act upon or in regard to the terms and provisions of the Plan and to hear and determine all controversies, suits and disputes that arise in connection with the interpretation, implementation, effectuation, consummation or enforcement of this Plan;

(f) To cause the correction of any defect, the curing of any omission or the reconciliation of any inconsistency in this Plan or the Confirmation order as may be necessary to carry out the purposes and intent of the Plan;

(g) To consider the modification of this Plan after the date of Confirmation as allowed pursuant to the Federal Rules of Bankruptcy Procedure and the Code;

(h) To determine all questions and disputes regarding title to Debtor' assets, and determination of all Causes of Action, controversies, disputes, or conflicts, whether or not subject to action pending as of the confirmation date, between a Debtor and any other person, including but not limited to, any rights of a Debtor to recover assets pursuant to the provisions of the Code or applicable state or federal law and the rights, obligations, and liabilities of the respective parties under any asset purchase agreements relating to the sale of a Debtor's assets;

(i) Except as otherwise provided in this Plan, to make any determinations and to issue any final orders to enforce, interpret or effectuate the Plan;

(j) To exercise the jurisdiction granted pursuant to section 505(a) and (b) of the Code to determine any and all federal, state, Commonwealth, local and foreign tax liabilities of, and any and all refunds of such taxes paid by a Debtor;

(k) To enforce all injunctions and mandatory acts provided for in this Plan or in the Bankruptcy Code;

(l) To enter a final order concluding and terminating this case; and

(m) To review the reasonableness of any post-Confirmation professional fees paid by the Reorganized Debtor pursuant to Sections 10.02 and 10.04 of this Plan; and

(m)    To determine such other matters as may be provided for in the Confirmation order.

8.07   Withdrawal of Plan. At the option of the Debtor, this Plan may be withdrawn at any time prior to Confirmation. Such option shall be exercised by filing with the Court a notice of withdrawal and mailing a copy of such notice to all creditors, equity security holders and persons specially requesting all notices in this case.

8.08   Retention of Claims. Pursuant to § 1123(b)(3)(B) of the Code, the Debtor

shall retain each and every claim, demand or cause of action whatsoever which the Debtor may have had power to assert immediately prior to Confirmation, including without limitation, actions for the avoidance and recovery pursuant to § 550 of the Code of transfers avoidable by reason of §§ 544, 545, 547, 548, 549 or 553(b) of the Code.

8.09    <u>Continued Reporting Requirements</u>. Pursuant to Fed. R. Bank. P. 2015, the Debtor is required to file monthly operating reports until Confirmation. After Confirmation, the Debtor is required to file quarterly reports until the case is closed, dismissed, converted to another chapter of the Code, or a final decree is entered by the Court, pursuant to LBR 2015-2.

8.10    <u>Exemptions from Transfer Tax</u>. The issuance, transfer or exchange of a security or the recording of any instrument evidencing the transfer of assets contemplated under the Plan, including the post-Confirmation sale of any property, shall not be taxed under any law imposing a stamp tax or similar tax pursuant to § 1146(c) of the Code.

8.11    <u>Modification of the Plan</u>. The Debtor may propose amendments or modifications of this Plan at any time prior to Confirmation with leave of the Court. After Confirmation, the Debtor, with approval of the Court, and so long as they do not materially or adversely affect the interests of creditors, may remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the order of confirmation in such a manner as may be necessary to carry out the purposes and effect of this Plan. The foregoing provisions of this paragraph do not limit the ability the Debtor to modify the Plan under § 1193 and applicable rules.

8.12    <u>Early Payment</u>. Nothing herein shall prohibit the Reorganized Debtor from making an early payment of an allowed claim, provided the funds used to pay that claim will not cause a reduction of the distributions to the unsecured claims in amount. In addition, nothing herein shall be construed as imposing a temporal requirement on the Debtor to wait the proposed length of the Plan to satisfy all Plan Payments, and the Reorganized Debtor shall not be prohibited from making an early payment to any Class of Claims, provided that the Debtor are current on all payments then required to any preceding Class.

8.13    <u>Preservation of Claims and Causes of Action</u>. The Debtor retains and reserves all causes of action. It is the intent of the Debtor that this reservation of claims shall be as broad as permitted by applicable law and shall include all claims, whether or not disclosed in the Debtor' schedules or this Plan. The Debtor shall have the widest possible latitude in deciding whether or not to pursue any possible cause of action, including without limitation any preference or other avoidance action. Except as expressly provided in the Plan, the Confirmation order shall not bar the Debtor by *res judicata*, collateral estoppel or otherwise from collecting, prosecuting or defending any matter, avoidance action, or cause of action.   Any and all creditors identified in Questions 6 and/or 7 to Debtor' Statement of Financial Affairs in this Chapter 11 case, which includes all creditors receiving payments from the Debtor in the 90 days preceding the Petition Date and insiders receiving payments in the year preceding the Petition Date that aggregated at least $6,425.00, may be the defendant of an avoidance action or other cause of action. These identified claims are not intended to be an exhaustive list, and the Debtor may add to or amend the identified claims after Confirmation and reserves their right to do so. Each creditor and party in interest is advised to review closely the Plan, the Debtor' filed Schedules, and Statement of Financial Affairs to determine whether any cause of action or avoidance action may be pursued against it. Avoidance actions to recover preferences pursuant to Section 547 of the Code may exist against every person who received a payment from the Debtor within 90 days prior to the Petition Date.

8.14    <u>Default Under Plan</u>. Confirmation shall effect a cure of any existing default under a debt, and notwithstanding the provision of any lease or loan document that may survive the Confirmation, an event of default as to any claim after Confirmation shall exist only if the Debtor (i) fail to make monetary payment when due under the Plan and that default is not cured within twenty (20) days following delivery of written notice of that default, (ii) fail to insure the property securing the creditor's claim for the value of the property, or (iii) dispose of the property securing the claim, normal wear and tear excepted, without either the consent of the creditor holding the claim, the satisfaction of the lien on that property, or the payment of the net proceeds to that creditor.

8.15    <u>Remedies</u>. In the event of a default, creditors shall take action as they deem appropriate. Without limitation, they may allow the Debtor such additional time as may be reasonably needed to cure such default, they may petition the court for relief from the automatic stay due to the Debtor' default, or they may petition the Court for dismissal or conversion of the case to one under Chapter 7.

8.16    <u>Disclosure of Compensation of Insiders</u>.   Pursuant to 11 U.S.C. § 1129(a)(5)(B), Debtor hereby discloses that insider Ashley E. Halloran will be employed by the reorganized debtor, and will receive compensation of an annual salary of at least $104,000.00 annually, subject to annual review and adjustment based upon the performance and profitability of the business.

8.17    <u>Notice</u>. Unless otherwise directed by the Debtor in writing, notice of default shall be sufficient if delivered as follows:

If to the Debtor or Reorganized Debtor:

*In the event the Debtor later change their address and provide written notice of such change, the Debtor's new address shall be used for creditors providing notice hereunder.*

A & J Logistics, LLC
8460 Jay Trent Court
Ooltewah, TN 37363
With copy to:

W. Thomas Bible, Jr.
Law Office of W. Thomas Bible, Jr.
6918 Shallowford Rd, Ste 100
Chattanooga TN 37421
ecfnoticing@tombiblelaw.com

If to the Trustee:

Brenda G. Brooks
Subchapter V Trustee
6223 Highland Place, Ste 102
Knoxville, TN 37919
bbrooks@moore-brooks.com

## ARTICLE IX
### EFFECT OF CONFIRMATION, DISCHARGE AND INJUNCTION

9.01    Vesting of Property. Except as otherwise expressly provided in the Plan, Confirmation of the Plan shall vest all the property of the Debtor's estate in the Debtor. However, in the event of the conversion of this case to one under Chapter 7, all of the property of the Debtor shall re-vest into the Debtor's Bankruptcy Estate for administration by the appointed Trustee.

9.02    Property Free and Clear. Except as otherwise provided in the Plan, all property shall be free and clear of all claims, liens and interests of any party as of the Confirmation of the Plan. This Plan will evidence the release of any and all liens or encumbrances against all property, unless such lien or encumbrance is specifically retained in the Plan.

9.03    Legal Binding Effect. The provisions of this Plan shall bind all claimants, whether or not they accept this Plan or whether or not their claim is impaired.

9.04    Effect on Third Parties. Nothing contained in the Plan or in the documents to be executed in connection with the Plan shall affect any claimant's rights against any third party, except as otherwise expressly provided in this Plan and except that any creditor or party in interest may only recover from any third-party guarantor or co-obligor the amount owed to it in excess of the amount to be paid on the underlying obligation pursuant to the Plan.

9.05    Release of Claims. The consideration to be distributed under the Plan shall be in exchange for, and in complete satisfaction and release of, all claims against the Debtor or any of its assets or properties, including without limitation any claim accruing after the Petition Date and prior to the Effective Date.

9.06    Continuing Stay. The automatic stay shall continue in force to the extent provided under 11 U.S.C. § 362 until and unless the Court grants relief from such stay.

9.07   <u>Permanent Injunction</u>. Except as otherwise expressly provided in, or permitted under, this Plan, the Confirmation Order shall provide, among other things, that all creditors who have held, hold or may hold claims that existed prior to the Effective Date and all persons who have had any dealings with the Debtor, are permanently enjoined on and after the Effective Date against (i) commencement or continuation of any judicial, administrative, or other action or proceeding against a Debtor or any of its assets or owned entities on account of claims against a Debtor, or on account of claims released pursuant to this Plan; (ii) enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree or order against a Debtor or any assets or property of same; or (iii) creation, perfection, or enforcement of any encumbrance of any kind against a Debtor arising from a claim. This provision does not enjoin the prosecution of any claims that arise on or after the Effective Date that is not addressed by the Plan, nor does it enjoin the determination in the Bankruptcy Court of the Allowed Amount of any claims that arose prior to the Effective Date.  Parties asserting entitlement to payment of administrative expenses incurred prior to the confirmation date and holders of claims shall be permanently enjoined from asserting any claim against a Debtor or any of its assets or owned entities based upon any act or omission, transaction or other activity that occurred prior to entry of the Confirmation Order, except as otherwise provided in the Plan, whether or not a proof of claim or interest was filed and whether or not such claim or interest is allowed under 11 U.S.C. § 502.

9.08   <u>Exculpation</u>. Except as otherwise provided in the Plan or Confirmation order, the Debtor and the professionals for the Debtor shall neither have nor incur any liability to any entity or person for any act taken or omitted to be taken (exclusive of an act constituting fraud, gross negligence or intentional misconduct) in connection with or related to this Chapter 11 case, including, without limitation, actions related to the formulation, preparation, dissemination, implementation, administration, Confirmation or consummation of the Plan, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan.

9.09   <u>Discharge [if under § 1191(a)]</u>. If this Plan is confirmed under § 1191(a), after the Effective Date of the Plan and the filing of a notice of substantial consummation, the Debtor will be discharged from any debt that arose before Confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt (i) imposed by this Plan; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

9.10   <u>Discharge [if under § 1191(b)]</u>. If the Plan is confirmed under § 1191(b), Confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on the completion of all payments due within the first 5 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt (i) on which the last payment is due after the first 5 years of the Plan, or as otherwise provided in § 1192; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## ARTICLE X
### CLOSING OF THE CASE AND CONTINUED EXECUTION OF THE PLAN

10.01  Closing of the Case.  In the event of consensual confirmation pursuant to 11 U.S.C. § 1191(a) and substantial consummation as defined in 11 U.S.C. § 1101(2), the Reorganized Debtor shall file a notice of substantial consummation and seek entry of a final decree, and the services of the  Subchapter V Trustee shall be terminated pursuant to 11 U.S.C. § 1183(c)(1).  In the event of nonconsensual confirmation pursuant to 11 U.S.C. § 1191(b), the case will remain open, and after the estate has been fully administered, Reorganized Debtor shall seek entry of a final decree pursuant to Fed. R. Bankr. P. 3022.  Upon entry of a final decree, the Subchapter V Trustee shall be discharged pursuant to 11 U.S.C. § 350(a).

10.02  Professional Fees after Confirmation. In the period after the date of Confirmation, but before closing of the case, the Reorganized Debtor may continue to avail themselves to the services of professional persons whose employment was approved at or prior to the date of Confirmation in completing administration of the case and in the consummation and performance of the Plan and, if necessary, employ additional professional persons to render services in and in connection with the case. With respect to services rendered and expenses incurred in or in connection with the case by any professional person during such period, the professional person may render periodic billing thereafter to the Reorganized Debtor, but each such payment shall be subject to review and approval by the Court as to the reasonableness thereof, as set forth herein below.  In any *Motion for Final Decree*, the Reorganized Debtor shall detail all amounts paid during such period to professional persons as compensation for services rendered or reimbursement of expenses incurred, with respect to which no prior application for allowance thereof has been made to the Court. At any hearing upon the Reorganized Debtor' *Motion for Final Decree*, the Court shall consider and determine whether or not such payments shall be approved.

10.03  Continued Execution of the Plan after Closing.  In the event of consensual confirmation pursuant to 11 U.S.C. § 1191(a), after closing of the case, the Reorganized Debtor shall remit all Plan Payments directly to the appropriate holders of allowed claims provided for in the Plan. Upon all payments having been distributed, the Reorganized Debtor shall be authorized to reopen the case, satisfy any additional requirements under the Code and receive a discharge.

10.04  Professional Fees after Closing. After closing of the case, the Reorganized Debtor may continue to avail themselves to the services of professional persons whose employment was approved at or prior to closing of the case in performance of the Plan. In the event such professional services are rendered, or expenses are incurred by any professional person therewith, an itemized bill shall be furnished by such professional person to the Reorganized Debtor, who shall promptly pay the same, subject to any objection being raised by the Reorganized Debtor. Pursuant to Section 8.06 of this Plan, the Court will retain jurisdiction to review the

reasonableness of each such payment in the event of such an objection or dispute.

     <u>10.05</u>  <u>Payment of Fees to Subchapter V Trustee.</u>  Allowance and payment of fees of the Subchapter V Trustee shall be treated in the same manner as fee claims of professionals set forth in Sections 10.02 and 10.04 of this Plan.

Date: June 20, 2024

<u>*s/Ashley E. Halloran*</u>
Ashley E. Halloran
President and Managing Member
A & J Logistics, LLC

Respectfully Submitted,

**<u>s/ W. Thomas Bible, Jr.</u>**
 **W. Thomas Bible, Jr. (014754)**
Law Office of W. Thomas Bible, Jr.
6918 Shallowford Rd, Ste 100
CHATTANOOGA TN 37421
423-424-3116
ecfnoticing@tombiblelaw.com
*Attorneys for Debtor*

## Attachment - Table of Unsecured Claims

The Debtor' unsecured debt, as reflected in the Debtor' schedules and through filed proof of claims, is shown below. The below amounts also include the unsecured portion of any bifurcated claims resulting from treatment in Part IV. The Court set a bar date for filing proofs of claims of May 31, 2024, [*See* Docket No. 20], and allowed claims filed before such date, are included in this category. The amount listed on a timely filed proof of claim (subject to allowance of the claim) shall control over any contrary amounts listed in the Debtor's schedules and deemed filed pursuant to 11 U.S.C. § 1111(a).

| Name of Creditor | Amount of Claim | Source of Amount |
|---|---|---|
| Bitty Advance 2, LLC | $105,600 | Claim 1, Claims Register |
| Mulligan Funding, LLC | 146,699.00 | Claim 2, Claims Register |
| American Express National Bank | $21,058.10 | Claim 3, Claims Register |
| U.S. Small Business Administration | $99,666.01 | Claim 5, Claims Register (bifurcated unsecured claim) |
| Headway Capital, LLC xxxx3973 | $63,431.00 | Claim 6, Claims Register |
| Reliable Fast Cash, LLC | $26,590.89 | Claim 7, Claims Register |
| Newbury Capital, LLC | $49,170.00 | Debtor's Schedules – No filed claim |
| Reliable Fast Cash, LLC | $27,771.00 | Debtor's Schedules – No filed claim |
| Rowan Advance (unknown) | $68,770.00 | Debtor's Schedules – No filed claim |
| A to B | $23,428.57 | Debtor's Schedules – No filed claim |

**Exhibit A – Liquidation Analysis**

**HYPOTHETICAL PERSONAL PROPERTY SALE**

**Bank Accounts, Accounts Receivable Inventory, Furniture, Computers 2 trailers (Schedule A)**

| | |
|---|---|
| Collective Value: | $272,678.77 |
| Less secured debt | ($593,573.35)[7] |
| Less claimed exemption | $0.00 |
| Less estimated cost of sale | |
| *Subtotal Net Proceeds* | *$0.00* |
| Less Chapter 7 Trustee fee (25% up to $5,000) | |
| Less Chapter 7 Trustee fee (10% from $5,000 to $50,000) | |
| Less Chapter 7 Trustee fee (5%  $50,000 up to $1,000,000) | |
| **Liquidation Value:** | **$0.00** |

---

[7] See Claims Register.

**EXHIBIT B1 — Most Recent Estimated Budget**

## A&J Logistics
### 12 Week Budget Projection

Enter start week date: 6/13/2024

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Week Ending** | 6/13/2024 | 6/20/2024 | 6/27/2024 | 7/4/2024 | 7/11/2024 | 7/18/2024 | 7/25/2024 | 8/1/2024 | 8/8/2024 | 8/15/2024 | 8/22/2024 | 8/29/2024 |
| Projected Beginning Balance | $7,056 | $12,654 | $19,774 | $9,848 | $14,082 | $20,296 | $24,621 | $12,026 | $14,480 | $18,174 | $20,949 | $23,644 |
| **Inflow** | 6/13/2024 | 6/20/2024 | 6/27/2024 | 7/4/2024 | 7/11/2024 | 7/18/2024 | 7/25/2024 | 8/1/2024 | 8/8/2024 | 8/15/2024 | 8/22/2024 | 8/29/2024 |
| Freight Revenue | $57,498 | $61,998 | $61,998 | $61,998 | $61,998 | $61,998 | $61,998 | $61,998 | $61,998 | $61,998 | $61,998 | $61,998 |
| Other Revenue | $3,800 | $3,800 | $3,800 | $3,800 | $3,800 | $3,800 | $3,800 | $3,800 | $3,800 | $3,800 | $3,800 | $3,800 |
| **Total Inflow** | **$61,298** | **$65,798** | **$65,798** | **$65,798** | **$65,798** | **$65,798** | **$65,798** | **$65,798** | **$65,798** | **$65,798** | **$65,798** | **$65,798** |
| **Outflow** | 6/13/2024 | 6/20/2024 | 6/27/2024 | 7/4/2024 | 7/11/2024 | 7/18/2024 | 7/25/2024 | 8/1/2024 | 8/8/2024 | 8/15/2024 | 8/22/2024 | 8/29/2024 |
| Payroll | $20,227 | $21,127 | $21,127 | $21,127 | $21,127 | $21,127 | $21,127 | $21,127 | $21,127 | $21,127 | $21,127 | $21,127 |
| Payroll Taxes | | | | | | | | | | | | |
| Unemployment Taxes | | | | | | | | | | | | |
| Worker's Comp | | | | | | | | | | | | |
| Other Taxes | | $1,000 | | | | $1,000 | | | | $1,000 | | |
| Inventory Purchases | $462 | $462 | $462 | $462 | $462 | $462 | $462 | $462 | $462 | $462 | $462 | $462 |
| Rent | | | | $875 | | | | $875 | | | | $875 |
| Utilities | | | $175 | $375 | | | $175 | $350 | $25 | | | $175 |
| Office Expenses and Supplies | $123 | $1,202 | $2,548 | $314 | $83 | $973 | $2,817 | $219 | $178 | $123 | $1,202 | $2,548 |
| Repairs & Maintenance | $4,885 | $4,885 | $4,885 | $4,885 | $4,885 | $4,885 | $4,885 | $4,885 | $4,885 | $4,885 | $4,885 | $4,885 |
| Fuel | $13,900 | $13,900 | $15,100 | $15,100 | $15,100 | $15,100 | $17,500 | $17,500 | $17,500 | $17,500 | $17,500 | $17,500 |
| Travel and Entertainment | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 |
| Equipment Rental and Leases | $13,831 | $13,831 | $15,343 | $15,343 | $15,343 | $15,343 | $15,343 | $15,343 | $15,343 | $15,343 | $15,343 | $15,343 |
| Legal/Accounting/Other Professional Fees | | | | $500 | | | | | | | | $500 |
| Insurance | | | $13,500 | | | | $13,500 | | | | | $13,500 |
| Factoring (Provident) | $2,172 | $2,172 | $2,484 | $2,484 | $2,484 | $2,484 | $2,484 | $2,484 | $2,484 | $2,484 | $2,484 | $2,484 |
| **Total Outflow** | **$55,700** | **$58,679** | **$75,724** | **$61,565** | **$59,584** | **$61,474** | **$78,393** | **$63,345** | **$62,104** | **$63,024** | **$63,103** | **$79,499** |
| **Ending Balance** | **$12,654** | **$19,774** | **$9,848** | **$14,082** | **$20,296** | **$24,621** | **$12,026** | **$14,480** | **$18,174** | **$20,949** | **$23,644** | **$9,944** |

EXHIBIT B2  - PROJECTION OF REQUIRED PAYMENTS UNDER PLAN

| Payment Date | Month Number | Monthly Plan Payment Total |
|---|---|---|
| 9/1/2024 | 1 | $3,770.60 |
| 10/1/2024 | 2 | $3,770.60 |
| 11/1/2024 | 3 | $3,770.60 |
| 12/1/2024 | 4 | $3,770.60 |
| 1/1/2025 | 5 | $3,770.60 |
| 2/1/2025 | 6 | $3,770.60 |
| 3/1/2025 | 7 | $3,770.60 |
| 4/1/2025 | 8 | $3,770.60 |
| 5/1/2025 | 9 | $3,770.60 |
| 6/1/2025 | 10 | $3,770.60 |
| 7/1/2025 | 11 | $3,770.60 |
| 8/1/2025 | 12 | $3,770.60 |
| 9/1/2025 | 13 | $3,770.60 |
| 10/1/2025 | 14 | $3,770.60 |
| 11/1/2025 | 15 | $3,770.60 |
| 12/1/2025 | 16 | $3,770.60 |
| 1/1/2026 | 17 | $3,770.60 |
| 2/1/2026 | 18 | $3,770.60 |
| 3/1/2026 | 19 | $3,770.60 |
| 4/1/2026 | 20 | $3,770.60 |
| 5/1/2026 | 21 | $3,770.60 |
| 6/1/2026 | 22 | $3,770.60 |
| 7/1/2026 | 23 | $3,770.60 |
| 8/1/2026 | 24 | $3,770.60 |
| 9/1/2026 | 25 | $3,770.60 |
| 10/1/2026 | 26 | $3,770.60 |
| 11/1/2026 | 27 | $3,770.60 |
| 12/1/2026 | 28 | $3,770.60 |
| 1/1/2027 | 29 | $3,770.60 |
| 2/1/2027 | 30 | $3,770.60 |
| 3/1/2027 | 31 | $3,770.60 |
| 4/1/2027 | 32 | $3,770.60 |
| 5/1/2027 | 33 | $3,770.60 |
| 6/1/2027 | 34 | $3,770.60 |
| 7/1/2027 | 35 | $3,770.60 |
| 8/1/2027 | 36 | $3,770.60 |
| 9/1/2027 | 37 | $3,770.60 |
| 10/1/2027 | 38 | $3,770.60 |
| 11/1/2027 | 39 | $3,770.60 |
| 12/1/2027 | 40 | $3,770.60 |
| 1/1/2028 | 41 | $3,770.60 |
| 2/1/2028 | 42 | $3,770.60 |
| 3/1/2028 | 43 | $3,770.60 |
| 4/1/2028 | 44 | $3,770.60 |
| 5/1/2028 | 45 | $3,770.60 |
| 6/1/2028 | 46 | $3,770.60 |
| 7/1/2028 | 47 | $3,770.60 |
| 8/1/2028 | 48 | $3,770.60 |
| 9/1/2028 | 49 | $3,770.60 |
| 10/1/2028 | 50 | $3,770.60 |
| 11/1/2028 | 51 | $3,770.60 |
| 12/1/2028 | 52 | $3,770.60 |
| 1/1/2029 | 53 | $3,770.60 |
| 2/1/2029 | 54 | $3,770.60 |
| 3/1/2029 | 55 | $3,770.60 |
| 4/1/2029 | 56 | $3,770.60 |
| 5/1/2029 | 57 | $3,770.60 |
| 6/1/2029 | 58 | $3,770.60 |
| 7/1/2029 | 59 | $3,770.60 |
| 8/1/2029 | 60 | $3,770.60 |

**EXHIBIT B3 - Disposable Income Analysis**

<u>Income</u>
Average Monthly Income [See Ex.B1: (Total Inflow x 12)/3]                     $263,192.00

<u>Less Costs of Operation [See Ex. B1: ( sum of 12 weeks of total outflow)/3]</u>          ($260,731.33)

<u>Less Proposed Fixed Monthly Payments to Priority and Secured Claims in the Plan</u>
Payments to SBA                                                              ($1,309.93)
Payments to Cadence Bank                                                    ($0.00)[8]
 All other creditors are under-secured or unsecured.

<u>Net Income Less Fixed Monthly Payments Proposed in the Plan:</u>                  $2,460.67
*multiplied by 36-**60** months (period described in Section 1191(c)(2))*          **$147,640.20**

---

[8] Cadence Bank will be paid outside the Plan, directly by co-guarantor Melody Halloran.